W. D. CLEVELAND & SONS v. SMITH et al.

(Court of Civil Appeals of Texas. Galveston. March 28, 1913. Rehearing Denied April 24, 1913.)

1. ACKNOWLEDGMENT (§ 37*)—MARRIED WOMEN—CERTIFICATE—VALIDITY.

Under Sayles' Ann. Civ. St. 1897, art. 4618, providing that no acknowledgment of a married woman shall be taken, unless it was fully explained to her by the officer taking the acknowledgment on an examination privily and apart from her husband, and that the officer shall not certify to the same, unless she acknowledged that the same was her act and deed, and that she willingly signed it and did not wish to retract, a certificate of acknowledgment, reciting that grantors, who were married women, having been made acquainted with the contents of the instrument, acknowledged, on examination apart from their husbands, that they executed the same freely and voluntarily and did not wish to retract, is sufficient; the provision for a privy examination not meaning that no person other than the officer shall be present.

[Ed. Note.—For other cases, see Acknowledgment, Cent. Dig. §§ 183, 199–216; Dec. Dig. § 37.*]

2. VENDOR AND PURCHASER (§ 265*)—TITLE—VENDOR'S LIEN.

Where notes for the price of land acknowledged that a vendor's lien was retained to secure their payment, one who purchased from the grantee with knowledge of such notes takes subject to the grantor's lien.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 492, 700–712; Dec. Dig. § 265.*]

3. ESTOPPEL (§ 26*)—DEED OF TRUST—ACQUISITION OF TITLE BY TRUSTEE.

The trustee in a deed of trust is under no obligation to defend the title of the grantor, and not having been required to sell the land he is not estopped to acquire title adverse to that acquired by the purchaser on foreclosure of the trust deed.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 61, 62; Dec. Dig. § 26.*]

4. ESTOPPEL (§ 28*)—WARRANTY DEED—HEIRS.

A warranty in a deed only binds the grantor's heirs to the extent of the property received by them from the grantor's estate, and it being insolvent the heirs are not estopped to acquire a title adverse to that conveyed by their ancestor.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 68; Dec. Dig. § 28.*]

**5. ADVERSE POSSESSION (§ 90*)—POSSESSION UNDER COLOR OF TITLE — PAYMENT OF TAXES.**

Where defendants were in possession of the land in controversy under color of title, and exercised acts of ownership and paid the taxes, the fact that the abstract number under which the land was rendered up to 1904 was not the proper abstract number of the survey will not prevent their acquisition of title by adverse possession, where the survey had not been given a separate abstract number until 1904, but was located under headright certificate consisting of two surveys, and was regarded by all until 1904 as having the same abstract number as the larger tract.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 517–519; Dec. Dig. § 90.*]

Appeal from District Court, Jasper County; W. B. Powell, Judge.

Trespass to try title by W. D. Cleveland & Sons against George W. Smith and others. From a judgment for defendants, plaintiff appeals. Affirmed.

H. C. Howell, of Jasper, for appellant. Blake & Williams, of Jasper, for appellees.

PLEASANTS, C. J. This is an action of trespass to try title brought by appellant, W. D. Cleveland & Sons, a private corporation organized and chartered under the laws of this state, against the appellees, George W. Smith, Sampson Smyth, Isaac Riley, and Isabella Riley, to recover the title and possession of a tract of 385 acres of land, a part of the George W. Smyth headright survey in Jasper county.

The defendants' answer, in addition to a general demurrer, general denial, and plea of not guilty, contains pleas of limitation of three, five, and ten years.

The trial in the court below, without a jury, resulted in a judgment in favor of the defendants. This is the second appeal of the case. The opinion of this court upon the former appeal is reported in 113 S. W. 547.

The land in controversy was conveyed to W. H. Smith by J. T. and S. A. Armstrong on October 23, 1875, and it is agreed by all parties that the said Armstrongs at the time of this conveyance had the title to the land.

On April 15, 1891, W. H. Smith executed a deed of trust upon this and other lands owned by him to secure an indebtedness due by the firm of Smith Bros., of which he was a member, to the firm of W. D. Cleveland & Co. This deed of trust contains a general warranty of title to the lands thereby conveyed. When W. H. Smith purchased the land from J. T. and S. A. Armstrong, he executed two notes for a part of the purchase money, one for $600 and the other for $500. The deed to Smith recites the execution of these notes, but did not retain a lien to secure their payment. Such lien was, however, acknowledged by a recital in the purchase-money notes executed by Smith. When the deed of trust to W. D. Cleveland & Co. was executed, Smith informed them that vendor's lien notes were outstanding against the land, and did not want to include this land in the deed of trust, but being urged to do so by the agent of Cleveland & Co. finally consented. W. D. Cleveland & Co. foreclosed this deed of trust in the district court of Tyler county on July 14, 1894, and under an order of sale issued on this judgment of foreclosure the land was sold on April 4, 1895. At this sale W. D. Cleveland & Co. bought this and the other lands included in the deed of trust and received a sheriff's deed thereto; the amount of their bid being credited on their judgment against Smith Bros. The appellant, W. D. Cleveland & Sons, hold the title acquired by W. D. Cleveland & Co. through this foreclosure proceeding.

Appellee George W. Smith was made trustee in the deed of trust above mentioned, but, as before stated, the trust was not executed by him, the sale and conveyance to Cleveland & Co. being made by the sheriff of Jasper county under the order of sale before referred to.

On April 16, 1897, the heirs of J. T. and S. A. Armstrong, in consideration of the payment to them by George W. Smith of the notes for $500 and $600, before mentioned, conveyed to him the land in controversy. This deed recites the former conveyance by J. T. and S. A. Armstrong to W. H. Smith, the execution of the notes by W. H. Smith and their payment by appellee, and in consideration of the premises the grantors, as heirs of said Armstrongs, "release, relinquish, and quitclaim deed unto George W. Smith all right, title, interest and claim that [they] as heirs, as aforesaid, of the said James T. Armstrong and wife, S. A. Armstrong, have or could in any wise have by inheritance in and to the lands for which the above-described notes were given."

The certificate of acknowledgment to this deed is as follows:

"The State of Texas, County of Hill:

"On the 16th day of April, A. D. 1897, personally appeared before me, J. M. Fennell, a notary public in and for said county, J. E. Armstrong, Emma Armstrong, W. B. Barnes, Annie Barnes, J. L. White, E. E. White, and Emma Armstrong, Annie Barnes, E. E. White, wives of the said J. E. Armstrong, W. B. Barnes, and J. L. White, whose names are subscribed to the foregoing instrument as parties thereto, personally known to me to be the individuals described in and who executed the instrument as parties thereto, who each acknowledged to me that they, each of them, respectively executed the same freely and voluntarily, and for the uses and purposes therein mentioned. And the said Emma Armstrong, Annie Barnes, and E. E. White, wives of the said J. E. Armstrong, W. B. Barnes, and J. L. White, having been

by me first made acquainted with the contents of said instrument, acknowledged to me, on examination apart from and without the hearing of their said husbands, that they executed the same freely and voluntarily without fear or compulsion or undue influence of their husbands, and that they do not wish to retract the execution of the same.

"In witness whereof, I have hereto set my hand and affixed my official seal the day and year above written.

"J. M. Fennell,
"Notary Public, Hill County, Texas."

The description of the land contained in this deed sets out the field notes, giving the metes and bounds of the land in controversy, and fixing its beginning corner at the northeast corner of the A. F. Smith survey. It does not give the name of this survey, nor the county in which it is located, but recites that it is the "lands for which said notes were given and executed." This deed was recorded in the deed records of Jasper county on May 29, 1897. At the time appellee Smith purchased from the heirs of the Armstrongs the land was in the possession of defendants Isaac and Isabella Riley and Sampson Smyth, who were holding possession as tenants of W. H. Smith. After appellee's purchase the parties above named continued to occupy and cultivate the land as his tenants. The tenancy and occupancy of the Rileys was continuous and unbroken up to the filing of this suit on October 30, 1905.

The occupancy of Sampson Smyth as a tenant of appellee continued to the 25th of November, 1901, when he purchased from appellee Smith 92 acres of the land and received a deed therefor, which was duly recorded in the deed records of Jasper county on November 25, 1901. Since said purchase he has occupied and claimed the 92 acres.

Appellee Smith paid the taxes on all the land for the years 1898 to 1901, inclusive, and thereafter on all of the land not sold to Sampson Smyth for each year up to and including the year 1905. Sampson Smyth paid the taxes on the 92 acres purchased by him for the years 1902 to 1905, inclusive. The possession and claim of appellees were of the exclusive and adverse character required to perfect title under the statutes of limitation.

The George W. Smith headright certificate was located upon two separate tracts of land. The abstract number 36 appears to have properly applied to the larger of the two tracts, and the smaller tract of 385 acres in controversy does not appear to have been given an abstract number until 1903, when it was numbered 968. When the land in controversy was first rendered by appellee Smith, it was rendered and accepted by the county authorities as on the George W. Smyth headright, Abstract No. 36. In 1903 the Commissioner of the Land Office gave the smaller tract in controversy the abstract number 968, and thereafter it was rendered by appellees under that abstract number.

Neither the deed of trust under which appellant claims, nor deed from J. T. and S. A. Armstrong to W. H. Smith, nor the deed from the heirs of said Armstrong to appellee George W. Smith, designates the survey by any abstract number, but the deed of trust and the deed to W. H. Smith designate it as a part of the George W. Smyth headright survey.

[1] Under the first assignment of error presented in its brief, appellant complains of the ruling of the trial court in admitting in evidence the deed from the Armstrong heirs to appellee Smith. Appellant objected to the admission of this deed as a muniment of title, on the ground that it was void as to Emma Armstrong, wife of J. E. Armstrong, Annie Barnes, wife of W. B. Barnes, and E. E. White, wife of J. L. White, because the certificate of acknowledgment was insufficient in the following particulars: "(a) The certificate of the officer fails to show that said women were examined by him privily and apart from their respective husbands. (b) Said certificate fails to show that the instrument was fully explained to said women, respectively. (c) Said certificate fails to show that said women willingly signed said instrument, respectively. (d) Said certificate fails to show that said women, respectively, declared that they did not wish to retract said instrument; all of which is shown by plaintiff's bill of exception No. 1."

The certificate, which we have before set out, recites that all of the grantors in said deed, naming each of them, appeared before the officer and were known to him to be the persons whose names are subscribed to said instrument, and each acknowledged to him "that each of them, respectively, executed the same freely and voluntarily and for the purposes and consideration therein expressed." It further recites: "And the said Emma Armstrong, Annie Barnes, and E. E. White, wives of the said J. E. Armstrong, W. B. Barnes, and J. L. White, having been by me first made acquainted with the contents of said instrument, acknowledged to me, on examination apart from and without the hearing of their said husbands, that they executed the same freely and voluntarily without fear or compulsion or undue influence of their husbands, and that they do not wish to retract the execution of the same." We think this certificate shows that the deed was acknowledged by the parties named in accordance with the provisions of article 4618, Sayles' Civil Statutes. It shows that they were examined apart from and without the hearing of their husbands, and were made acquainted by the officer with the contents of the instrument. The provision of the statute that the examination shall be "privily and apart" from the husband does not mean that no person other than the officer shall be present

at the examination, but only requires that the examination shall not be in the presence of the husband, and when the examination is apart from and without the hearing of the husband it is a privy examination and meets the requirements of the statute. If, as stated in the certificate, these grantors were made acquainted with the contents of the instrument by the officer, the requirement of the statute that the instrument should be fully explained to them was complied with. The officer could not have made them acquainted with the contents of the instrument without fully explaining it to them. The fact that the certificate does not show that each of the three women separately acknowledged that she willingly executed the instrument and declared that she did not wish to retract it does not affect its validity. If all of them made such acknowledgment and declaration, each of them necessarily did so, and the statute does not require that such acknowledgment and declaration should have been made severally. The acknowledgment that they executed the deed "freely and voluntarily and without fear or compulsion or undue influence of their husbands" was an acknowledgment that they willingly signed it. The exact words of the statute need not be used in the certificate if the full intent and meaning of the statute is shown by the certificate to have been complied with. We think none of appellant's objections to the certificate is valid, and the assignment is overruled.

It would serve no useful purpose to discuss in detail the various assignments of error presented in appellant's brief. Upon the facts before set out, the trial court correctly held that appellees had the superior title to the land in controversy.

[2] The evidence is sufficient to sustain the finding of the trial court that the notes given by W. H. Smith to J. T. and S. A. Armstrong for the purchase money of the land contained an acknowledgment that a vendor's lien was retained upon the land to secure their payment. W. H. Smith having failed to pay these notes, the superior title to the land remained in his vendors, and upon their death passed to their heirs, and the deed from said heirs to appellee George W. Smith, in consideration of the payment of said notes, put this title in him. The agent of Cleveland & Co., who procured the deed of trust from W. H. Smith, was informed that the land was not paid for, and a vendor's lien had been retained thereon to secure the payment of the purchase-money notes; and therefore said company knew that the superior title was in the Armstrongs.

[3] As said in our opinion upon the former appeal of this case, there is no merit in appellant's contention that the appellee George W. Smith, because of the fact of his having been named trustee in the deed of trust executed by W. H. Smith, and through which appellant derives its title, and also because of his relationship as son and heir of W. H. Smith, is estopped from asserting against appellant any title to the land, and that any title acquired by him subsequent to the execution of said deed of trust inured to appellant's benefit. If George W. Smith had executed the trust imposed upon him by the trust deed, and as such trustee had sold and conveyed the land, his warranty of the title would not have placed him under any personal obligations to defend or protect the title so conveyed by him; and we know of no principle of estoppel that would have forbidden him from thereafter acquiring and asserting against his vendee a superior title to that held by the maker of the trust deed. In such case, in making conveyance as trustee, he would only have acted as the channel or medium through which the title and warranty of W. H. Smith, the maker of the trust deed, passed to the purchaser, and would not be bound by the express warranty or any of the implied covenants of the grantor in the trust deed. Such being his status in relation to the obligations of the maker of the trust deed, there would be no basis for the application of the doctrine which passes to a grantee by estoppel a title acquired by his grantor after he has conveyed the land. Certainly when, as shown by the facts before set out, George W. Smith was not called upon to act as trustee, and took no part in the conveyance of the title acquired by appellant, he should not be held estopped to acquire and assert a title to the land adverse to that acquired by appellant under the trust deed.

[4] It is equally clear that George W. Smith was not estopped, as an heir of W. H. Smith, to acquire and assert against appellant a title to the land superior to that acquired by appellant under the trust deed. He would only be bound by his father's warranty to the extent of the value of the property inherited by him from his father, and the evidence shows that the estate of W. H. Smith was insolvent. If he had received property from his father by inheritance, and to that extent was liable on his father's warranty of title to the land conveyed to appellant, such liability would not cause his title to the land in controversy to inure to appellant's benefit. His liability as an heir in the warranty of his father not being a personal liability or obligation, but applying only to the property inherited by him from his father, there is no estoppel against his acquiring and holding the title to the land superior to that conveyed by his father to appellant.

[5] We also agree with the trial court in the conclusion that appellees have title to the land in controversy under the five-year statute of limitation. The undisputed evidence shows that they held adverse possession of the land for more than five years before this suit was brought, claiming under deeds duly registered, and that they paid the

taxes on the land from 1898 to 1905, inclusive. The fact that the abstract number under which the land was rendered up to 1904 was not the proper abstract number of the survey is immaterial, in view of the facts that the survey had been given no separate abstract number until 1904, and was located under the George W. Smyth headright certificate, which was located upon two tracts of land, the larger of which tracts was given the abstract number 36, and the tract in controversy, up to the year 1904, appears to have been regarded by the county assessor, as well as appellees, as having the same abstract number as the larger tract. In these circumstances its rendition under abstract No. 36 could not have misled appellant, and there is no question that the land in controversy was the land rendered and on which appellees paid the taxes.

We have considered all of appellant's assignments of error, and in our opinion none of them should be sustained. The judgment of the trial court is affirmed.

Affirmed.